UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF MICHIGAN and
MICHIGAN ECONOMIC DEVELOPMENT
CORPORATION,

       Plaintiffs,                            Case No. 5:05-cv-95

v                                                       Hon. Wendell A. Miles

LITTLE RIVER BAND OF OTTAWA
INDIANS and LITTLE TRAVERSE BAY
BANDS OF ODAWA INDIANS,

       Defendants.
_____/

**ORDER GRANTING MOTION TO COMPEL**

Pending before the court is a motion by plaintiffs to compel Frank Ettawageshik, Chairman of Defendant Little Traverse Bay Bands of Odawa Indians (LTBB), to respond to questions propounded at a deposition on October 20, 2006 (docket no. 145), pursuant to Fed.R.Civ.P. 37(a)(2)(B).  Specifically, plaintiffs seek to compel the deponent to answer questions regarding:

       1.  An August 31, 2004 letter from Chairman Ettawageshik to Michigan's Governor notifying her that his Tribe was withholding payments to the State;

       2.  An October 8, 2004 letter from the State responding to Mr. Ettawageshik's letter;

       3.  A 2003 amendment to a gaming compact; and

       4.  A May 17, 2004 opinion letter from an attorney to the co-defendant tribe.

**The August 31, 2004 Letter from Chairman Ettawageshik to Governor**

This action arises from gaming compacts executed by the parties in 1998, in which defendants agreed to pay the state 8% of the net win from electronic games of chance at casinos operated by defendants. On August 31, 2004, LTBB sent a letter to the Governor and the Attorney General of the State to notify them that the Tribal Council had taken official action to withhold these payments. The letter states the Tribe's reasons for doing so. The letter was signed by the deponent in his capacity as Tribal Chairman, and was written on the letterhead stationery of the Tribal Council and the Tribal Chairman. The introductory language of the letter is particularly instructive:

> "I write to notify you that, by official action of our Tribal Council, the Little Traverse Bay Band of Odawa Indians ("LTBB") has decided to place into a separate bank account the payment that would otherwise be due to the State on August 31, 2004 under the terms of our Class III Gaming Compact with the State."
>
> "The reasons for our action are straightforward. . . ."

Since the letter is dated the same date the payment was due, it is evident that the Tribal Council was presenting the State with a *fait accompli*.

When plaintiffs sought to question the Chairman about this letter at his deposition, he was instructed by his attorney not to answer those questions on the basis of the "settlement privilege." *See* Ettawageshik deposition at 136-39, 142-44, 146.[1]

---

[1] The letter would clearly constitute an admission by a party-opponent under FRE 801(d)(2) if plaintiffs seek to offer it against defendant at trial and, to the extent that it was necessary to prove the contents of the letter, the letter itself is the best evidence of specifically what the deponent wrote (individually as Tribal Chairman, or as the authorized representative of the Tribal Council). *See* Fed. R. Evid. 1002. Plaintiffs contend it is the best evidence of whether LTBB breached the compact. It is certainly relevant and discoverable evidence about which the Tribal Chairman could be deposed, unless defendant is successful in cloaking it with the settlement privilege.

An attorney may instruct a deponent not to answer a question during a deposition when it is necessary to preserve a privilege. Rule 30(d)(1).[2]  Here, defendant relies on a "settlement privilege" recognized by the Sixth Circuit.  *See, Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976 (6th Cir. 2003).  Absent the applicability of such a privilege, defendant has offered no other basis for instructing the witness not to answer.

The question before the court in *Goodyear* was whether communications made in furtherance of settlement negotiations in one case were discoverable by litigants in another action. *Goodyear* at 979.  Before answering this question, the court engaged in a thorough analysis of the factors which justify such a privilege.  *Id* at 979-980.  As a general principle, the court concluded that "viewed 'in the light of reason and experience,' we believe a settlement privilege serves a sufficiently important public interest, and therefore should be recognized," adding the caveat, however, that "the recognition of a privilege should be judged on a case-by-case basis and weighed against the public interest".  *Id* at 980.  In defining the parameters of a settlement privilege, the *Goodyear* court was reviewing settlement proceedings which had occurred during the case pending before it.  And it was within this context of permitting confidentiality in settlement negotiations to resolve existing litigation, that the *Goodyear* court concluded that "any communications made in furtherance of settlement are privileged."  *Id* at 983.

Defendant's arguments for application of "Settlement Privilege" protection to the August 31, 2004 letter fail for several reasons.  First, the settlement privilege recognized by the Sixth Circuit in *Goodyear* has not been shown to apply in the absence of the existence of an actual

---

[2]*See also,* Fed.R.Civ.P. 26(b)(1) which provides that "[p]arties may obtain discovery regarding any matter, *not privileged,* that is relevant to the claim or defense of any party. . . " (emphasis added).

case between the parties. While the *Goodyear* court was clearly discussing the settlement privilege within the context of an action already before the courts, defendant here seeks to push the reach of the so-called settlement privilege to cover documents exchanged between Chairman Ettawageshik and two public officials of the State of Michigan well prior to any lawsuit being instituted. It does so based upon the assertion that there was an on-going dialogue between the State and the Tribes about the gaming compact prior to the lawsuit. Defendant seems to take the position that whatever documents came within the purview of those talks were protected by the settlement privilege. Nothing in the *Goodyear* opinion suggests, however, that the Sixth Circuit would venture to extend the settlement privilege it recognized in that case to *ad hoc* negotiations between members of the public who do not yet find themselves in a lawsuit with each other.

As a practical matter, the use of a privilege fashioned to resolve existing cases subject to a court's supervisory authority, the parameters of which are already fixed by the pleadings, would be fraught with difficulties if the privilege was allowed to shield statements made in the course of everyday life, and outside the scope of litigation.

For example, if a man said to his neighbor, "I knocked down your fence because it was on my side of the property line, but I will be happy to let you put it back up if you want to discuss some financial remuneration," could he reasonably expect this admission to be "privileged" when his neighbor sues him, merely because he offered to talk settlement at the same time? What about a parts supplier who says, "I am withholding this month's shipment of widgets to you. Let's tear up our present contract and negotiate a new one," or the man who says, "I shot your dog, but let's talk." Are these statements privileged?

Second, the August 31, 2004 letter was not itself a settlement communication. The strong public interest favoring secrecy of matters discussed by parties "during settlement negotiations," *Id* at 980, does not extend with equal force to discussions about the *prospect* or *existence* of settlement negotiations. *Goodyear* points out, for example, that the exceptions to the bar against the admissibility of statements made in compromise negotiations under Rule 408, Fed. R. Evid., have been used "to admit the *occurrence* of settlement talks" [emphasis added], while barring admissibility of "settlement *communications* into evidence for any purpose." (Emphasis in original.) *Goodyear* at 981. Like other privileges, it is the underlying communication that is protected, not the fact of the relationship of the parties which led to the talks. *Id* at 981-2.

Defendant's August 31, 2004 letter is not in the nature of a "settlement communication." A fair reading of the letter permits no other conclusion.[3] Rather, it simply constitutes the written notification by the Tribal Chairman of the LTBB to the Governor of the State of Michigan, the state's highest executive official – one sovereign to another – notifying her both of an "official action" *already* taken by the Tribal Council to withhold funds from the State of Michigan due under the gaming compact, and stating the Tribal Council's justification for its action.[4]

---

[3]*Compare* Letter of Chairman Ettawageshik *with* Declaration of Independence ("When. . . it becomes necessary for one people to dissolve the political bands which have connected them with another, . . .a decent respect to the opinions of mankind requires that they should declare the causes which impel them to the separation"). Jefferson's document was not a "settlement" communication; on the other hand, what Grant said to Lee at Appomattox Court House may have been.

[4]Notwithstanding that the letter is an explicit notification of an official action already taken, defendant seems to downplay or ignore this fact in its papers. For example, defendant at one point characterizes Chairman Ettawageshik's letter as an expression of the Tribe's "intention" to discontinue payments, when in fact the decision had already been made. Defendant's brief at 11. In several other references to the August 31 letter, defendant omits any reference to the letter's notification of the official action taken by the defendant. Plaintiff's brief

Moreover, not only is the letter on its face not a settlement communication, it was clearly not intended by its writer to be one.  At the end of the letter, the Chairman states that the LTBB "would be willing to meet with the State to discuss possible resolution of this matter[.]" The letter further invites the Governor or the Attorney General to contact the Tribal Council's general counsel to "coordinate the scheduling of such a meeting."  Thus, it is obvious from the Chairman's own words that he intended this letter to be an invitation "to meet" and "to discuss possible resolution" of the matter.   These are not "settlement communications" within the meaning of the privilege because they are not the type of words the privilege seeks to protect.

Third, the purpose of the settlement privilege is to keep the give and take of proposed settlement negotiations secret.  Significantly, there is no suggestion in this letter that its contents were considered to be confidential settlement communications.  The letter is not marked as a confidential or privileged communication.

When one writes an official letter bearing no indicia of confidentiality, to the highest public officials in the State, announcing a decision to turn off a flow of revenue to the public treasury, it is not a declaration one expects to keep secret.  To the contrary, in this instance defendant ceased payment intentionally so that the State would have to come after the Tribe for the money.  Otherwise, the Tribe would have to sue the State to recoup the money, and the Tribe knew the State would assert an Eleventh Amendment defense.  Defendant's brief at 8.  This letter is the gauntlet being thrown down.  The Tribe must have known that if the State was forced to sue, this letter would

---

at pp. 1 and 8, and Declaration of Counsel dated November 21, 2006 at p. 2.

  Defendant's failure to regard this letter as a formal notification by the Tribe to the State of an official action taken  by the Tribal Council is significant because it leads to the erroneous reasoning that this letter has no independent significance, and is nothing more than one in a series of communications between the Tribe and the State discussing their differences.

be public and be at the very heart of the lawsuit. Indeed, this is why the Tribe took the opportunity to justify its actions in the letter.

Defendant has attempted to stretch the umbrella of the settlement privilege too far. Whatever else it might be, the August 31 letter was not a confidential settlement communication. Since it was not protected by the settlement privilege, it was improper of defendant's counsel to bar deposition questions about it by asserting that privilege.

**The October 8, 2004 Letter to LTBB from Assistant Attorney General Todd Adams**

Initially at issue was an October 8, 2004 letter, written at the direction of Attorney General Michael Cox, in response to the Chairman's letter of August 31, 2004. Neither side is treating this letter as confidential. Indeed, defendant quoted portions of the Adams letter in its brief to this court opposing plaintiffs' motion for summary judgment. Accordingly, the Tribal Chairman may be deposed about it.

**The July 22, 2003 Amendment to the 1998 Compact**

The 2003 amendment is by definition part of the 1998 State-LTBB gaming compact underlying this action, and is a public document. There is nothing secret about this document. Defendant even quotes from it in its brief. It does not contain any "settlement communications," and it cannot be considered a "settlement document," within any realistic definition of that term, merely because the parties may have referred to it during settlement negotiations. *See, e.g.,* Fed. R. Evid. 408 . ("This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.") It was improper to assert the settlement privilege to bar questions to Mr. Ettawageshik, who is the present Tribal Chairman,

7

about his familiarity with this document. Ettawageshik dep. at 142. Defendant argues that Mr. Ettawageshik did not hold a position in the Tribe's government when the amendment was negotiated, but that fact does not bring the settlement privilege into play.

### The May 17, 2004 Letter to the General Counsel of the Little River Band of Ottawa Indians (LRB) from Attorney Peter Ellsworth

This appears to be an opinion letter written by a LRB attorney, to the general counsel of LRB, not to deponent's tribe. When this letter was shown to Chairman Ettawageshik of the LTBB during his deposition, and he was asked to take a moment to read it, his attorney interrupted and instructed him not to read the letter and not to answer any questions about it. Ettawageshik dep. at 145-6. Defendant's attorney acknowledged at the deposition that the letter was supplied by the LRB and not deponent's tribe. The attorney further stated the letter "is not a letter on which we have relied or intend to rely in this litigation." Deposition of Ettawageshik at 146. Despite these disclaimers, counsel instructed his client not to answer questions based on the settlement privilege.[5]

This letter does not constitute a settlement communication from a party to another, since it is a letter from one party's attorney to his own client.[6] Again, documents do not become privileged and off limits to deposition questions under the settlement privilege merely because, at some point, they may have been discussed during settlement negotiations. *See, e.g.,* 408. Moreover, defendant's disclaimer that it did not intend to rely on the letter at trial certainly did not preclude

---

[5]There is another letter from Attorney Ellsworth dated October 21. Defendant correctly points out that no objection was raised to questions about that letter and that the Tribal Chairman testified he had not seen that letter before. Since plaintiffs were afforded an opportunity to depose the Tribal Chairman on the October 21 letter and did so, it cannot provide the basis for further relief, notwithstanding plaintiffs' prayer for relief in their motion.

[6]No attorney-client privilege has been raised, and LRB has waived any such privileges pertaining to the letter.

plaintiffs' examination into it.  The assertion of the settlement privilege under these circumstances improperly impeded plaintiffs' examination of the deponent.

## Conclusion

For the reasons stated, plaintiffs' motion to compel responses to deposition questions (docket no. 145) is GRANTED.  The deposition of Frank Ettawageshik may be resumed at a time and date in Lansing, Michigan, to be agreed to by the parties.  The deposition shall be limited to questions regarding the documents discussed above and natural follow-up questions arising therefrom.  The deposition may include any further topics agreed to by the parties.  Plaintiff shall be awarded costs and attorneys fees in the amount of $4,000.00 within 60 days of the date of this order.  In the event that any party does not concur in this amount, they shall notify the opposing side within ten (10) days of the date of this order.  Plaintiffs shall then have 14 days from the date of notification to file affidavits and supporting documents justifying what they believe to be appropriate costs and attorneys fees, whether lesser or greater than the amount stated above.  Defendant shall have 14 days after receipt of these documents to file any appropriate response.  Only if the court deems it necessary will it schedule a further hearing before resolving the issue of costs.  All parties shall bear their own costs arising from the remainder of the deposition.

IT IS SO ORDERED.

Dated:  March 16, 2007              /s/ Hugh W. Brenneman, Jr.
                                    Hugh W. Brenneman, Jr.
                                    United States Magistrate Judge